ALLIED CLOVE LAKES Co., a Partnership, Respondent, v NICHO-
LAS D. DEMISAY, Individually and Doing Business as
CLOVE LAKES HEALTH RELATED FACILITY, Appellant.

First Department, May 22, 1980

## APPEARANCES OF COUNSEL

*Helen Minkin* of counsel *(Rooney & Minkin,* attorneys), for
appellant.

*Jacob W. Heller* of counsel *(Eli Feit* with him on the brief;
*Heller Horowitz & Feit,* attorneys), for respondent.

## OPINION OF THE COURT

SILVERMAN, J.

Defendant tenant appeals from a grant of partial summary
judgment in favor of plaintiff landlord based on an escalation
clause in a lease between the parties.

In our view, the escalation clause in the lease is not sufficiently unambiguous in its application to the present situation so as to require judgment for plaintiff as a matter of law. We cannot reject the possiblity that properly admissible evidence may show that plaintiff is not entitled to the escalated rent.

The premises are a "health related facility".

THE 1971 LEASE. The parties entered into a lease dated April 22, 1971, with an annual rental for the first five years of $630,000, "based upon $1,800 per bed for a total of 350 beds being approved and built. The annual rental and monthly installments shall be increased or decreased at the annual rate of $1,800 per bed in the event a lesser or larger number of beds is approved and built". (Par 9 [a].) The lease contained a cost-of-living escalation clause commencing with the sixth year of the lease. That escalation clause provided: "Any increase hereunder shall be subject to approval, if required, of N. Y. Department of Health, or such governmental body then having jurisdiction thereover." (Par 9 [b].)

THE 1973 LEASE. In 1973, the parties entered into a new lease at a rental of $700,000 based upon $2,000 per bed, with a provision: "3. In the event that the rentals set forth in the aforementioned lease are not approved for reimbursement, all of the terms and conditions of the *original* lease shall remain in full force and effect [except that the rental shall remain at $1,800.00 per bed] until such time as an increase to $2,000.00 is approved by the proper authorities." The bracketed clause "except that * * *" is included in the typewritten version but is stricken out in ink. The word "original" (which we have italicized) is not typed in but is interlined by hand.

As the $2,000 per bed provision was never approved for reimbursement, the parties were remanded to the 1971 lease with its escalation clause.

Defendant tenant says that the word "approval" is the excerpt from the escalation clause in the 1971 lease, paragraph 9 (b) above, means approval for reimbursement, i.e., by the State Department of Health; that there has been no such approval; and that, therefore, the cost-of-living escalation clause is not now operative.

Plaintiff landlord says that the word "approval" in that escalation clause does not mean approval for reimbursement but some other kind of approval; that the clause applies only if such approval is required, and that no such approval is

required by law; that in any event, the original lease with its escalation clause was approved by the Department of Health when originally filed with it.

In our view, both the words "approval" and "if required," in the context of these leases and this industry, are sufficiently ambiguous so that their meaning should not be resolved against the tenant as a matter of law on a motion for summary judgment, but they should be interpreted in the light of the circumstances, background and intention of the parties as they may be developed at a trial.

The word "approval" may or may not mean approval for reimbursement by the State. In the context of this industry, in talking about rents, it is at least arguable that approval for reimbursement is exactly what was meant.

Again the phrase "if required" may mean if required by specific provision of law as plaintiff contends. Alternatively, it may mean required as a matter of the facts of economic life in the complex of economic and governmental conditions in which nursing homes operate, i.e., more or less synonymous with "if necessary".

"The fundamental rule in the construction of all agreements is to ascertain the substantial intent of the parties * * * The purpose to be accomplished and the object to be advanced may be considered * * * and may, if necessary, be shown by parol evidence as bearing on the consideration for the written instrument * * * If it is claimed by defendant that a construction should be placed on the contract other than has been indicated, or any doubt arises from the writing itself, the court must look into the intention of the parties to be derived not alone from the words used but it must be read, so far as they may be ambiguous, in the light of the surrounding facts and circumstances * * * in which event parol evidence may be introduced as to those facts and circumstances without violating the parol evidence rule". *(O'Neil Supply Co. v Petroleum Heat & Power Co.,* 280 NY 50, 55-56.) "To carry out the intention of a contract, words may be transposed, rejected, or supplied, to make its meaning more clear". *(Castellano v State of New York,* 43 NY2d 909, 911.) Defendant tenant says that one of the important surrounding facts and circumstances in this case is the economic background and situation. Defendant tenant contends, in substance, that this industry is essentially based on the premise that the public treasury ultimately pays for everything, and that both parties

understood that the tenant would only be able to pay the landlord such rent as was allowed by the State Department of Health as a reimbursable expense. If we cannot take judicial notice that this is the economic foundation of the industry, we at least cannot say as a matter of law that this is not so. In that connection defendant tenant points out that 93% of its patients are Medicaid and Medicare patients and that thus 93% of its revenue comes from government sources.

We note that the original rental provision in the 1971 lease states the original annual rental as $630,000 "based upon $1,800 per bed * * * being approved and built" to be increased or decreased at that rate per bed if a lesser or larger number of beds is approved or built. And a similar provision is contained in the 1973 lease based upon $2,000 per bed "approved and built". Thus the word "approved" is used in connection with the original rents as well as the escalated rents. Furthermore, the rents are based on a per bed figure. This would be quite unusual in a conventional lease provision as to rental. But it would seem to be relevant to approval for reimbursement by the State Department of Health. Again the applications for approval of increases were made and denied or partially approved in terms of $— per bed.

The parties themselves have acted as if "approval" was "required" ever since 1971. Thus when in connection with the 1973 lease an effort was made to increase the rent to $2,000 per bed, the tenant apparently did ask for approval by the State Department of Health. And the State Department of Health wrote a letter dated August 27, 1973 which was certainly in terms of disapproval in connection with the rent, though perhaps technically it was talking about approval of the application for the operation of the facility. But certainly, the Department of Health did not say it had nothing to do with approval or disapproval of rent. And on November 29, 1973, the landlord wrote to the State Department of Health referring to "the basis upon which we asked for approval of the increase in rental". Again the Department of Health approved an increase to a rent based on $1,900 per bed and refused to approve a rent based on $2,000 per bed.

We note that the lease provides that the premises are rented for use as a health related facility, "as same is defined by the New York State Department of Social Services, and all city and federal governmental bodies having jurisdiction".

As to plaintiff landlord's argument that the Department of

Health has in fact approved the cost-of-living increases by approving the original lease, the Department of Health plainly does not think so in its letters of August 27, 1973 and December 12, 1973.

We do not say that these considerations mean that defendant tenant is correct in its contentions and that plaintiff landlord is wrong, but we think that these considerations cast sufficient doubt so that the true meaning and application of the escalation clause should be determined only after a consideration of the relevant facts and circumstances to be explored at a trial.

The judgment of the Supreme Court, New York County (GREENFIELD, J.), entered November 19, 1979, granting partial summary judgment in favor of plaintiff on the first cause of action, should be reversed, on the law, with costs to defendant-appellant, and plaintiff's motion for partial summary judgment on the first cause of action should be denied.

KUPFERMAN and SANDLER, JJ., concur; MURPHY, P. J., dissents on opinion of GREENFIELD, J., at Special Term.

Judgment, Supreme Court, New York County, entered on November 19, 1979, reversed, on the law, and vacated, and plaintiff's motion for partial summary judgment on the first cause of action denied. Defendant-appellant shall recover of plaintiff-respondent $75 costs and disbursements of this appeal.